UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT


DAVID E. CAMPBELL              :
                              :                    PRISONER
         v.                   :   Case No. 3:04cv1111(DFM)
                              :
WARDEN DZURENDA, et al.[1]     :


RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT

     Plaintiff David E. Campbell was confined at the Cheshire

Correctional Institution in Cheshire, Connecticut during the

incidents giving rise to this action.  He brings this civil

rights action pro se claiming that he was exposed to

environmental tobacco smoke ("ETS") in violation of his rights

under the Eighth Amendment and state law.  He seeks damages and

declaratory relief.  The parties filed cross motions for summary

judgment.  For the reasons that follow, defendants' motion is

granted in part and denied in part and the plaintiff's motion is

denied.

I.   Standard of Review

     In a motion for summary judgment, the burden is on the

_____

     [1]The named defendants are Warden Dzurenda, C.T.O. Wembley,
C/O Anderson, C/O Pelkey, C/O Defrancesco and C/O Handley.

moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law.  <u>See</u> Rule 56(c), Fed. R. Civ. P.; <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986); <u>White v. ABCO Engineering Corp.</u>, 221 F.3d 293, 300 (2d Cir. 2000).  A court must grant summary judgment "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact....'"  <u>Miner v. Glen Falls</u>, 999 F.2d 655, 661 (2d Cir. 1993) (citation omitted).  A dispute regarding a material fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  <u>Aldrich v. Randolph Cent. Sch. Dist.</u>, 963 F.2d 520, 523 (2d Cir.) (quoting <u>Anderson</u>, 477 U.S. at 248), <u>cert. denied</u>, 506 U.S. 965 (1992). After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the nonmoving party must present "significant probative evidence to create a genuine issue of material fact."  <u>Soto v. Meachum</u>, Civ. No. B-90-270

(WWE), 1991 WL 218481, at *6 (D. Conn. Aug. 28, 1991).  A party

may not rely "on mere speculation or conjecture as to the true

nature of the facts to overcome a motion for summary judgment."

Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986),

cert. denied, 480 U.S. 932 (1987).

The court "resolve[s] all ambiguities and draw[s] all

permissible factual inferences in favor of the party against whom

summary judgment is sought."  Patterson v. County of Oneida, NY,

375 F.3d 206, 218 (2d Cir. 2004).  Thus, "[o]nly when reasonable

minds could not differ as to the import of the evidence is

summary judgment proper."  Bryant v. Maffucci, 923 F.2d 979, 982

(2d Cir.), cert. denied, 502 U.S. 849 (1991).  See also Suburban

Propane v. Proctor Gas, Inc., 953 F.2d 780, 788 (2d Cir. 1992).

A party may not create a genuine issue of material fact by

presenting contradictory or unsupported statements.  See

Securities & Exchange Comm'n v. Research Automation Corp., 585

F.2d 31, 33 (2d Cir. 1978).  Nor may he rest on the "mere

allegations or denials" contained in his pleadings.  Goenaga v.

March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir.

1995).  See also Ying Jing Gan v. City of New York, 996 F.2d 522,

532 (2d Cir. 1993) (holding that party may not rely on conclusory

statements or an argument that the affidavits in support of the

motion for summary judgment are not credible).  A self-serving

affidavit which reiterates the conclusory allegations of the complaint in affidavit form is insufficient to preclude summary judgment.  <u>See Lujan v. National Wildlife Fed'n</u>, 497 U.S. 871, 888 (1990).  In addition, "'[t]he mere of existence of a scintilla of evidence in support of the [plaintiffs'] position will be insufficient; there must be evidence on which the jury could reasonably find for the [plaintiffs].'"  <u>Dawson v. County of Westchester</u>, 373 F.3d 265, 272 (2d Cir. 2004) (quoting <u>Anderson</u>, 477 U.S. at 252).

Where one party is proceeding <u>pro se</u>, the court reads the <u>pro se</u> party's papers liberally and interprets them to raise the strongest arguments suggested therein.  <u>See Burgos v. Hopkins</u>, 14 F.3d 787, 790 (2d Cir. 1994).  Despite this liberal interpretation, however, a "bald assertion," unsupported by evidence, cannot overcome a properly supported motion for summary judgment.  <u>Carey v. Crescenzi</u>, 923 F.2d 18, 21 (2d Cir. 1991).

When cross-motions for summary judgment are presented to the court, summary judgment should not be granted "unless one of the moving parties is entitled to judgment as a matter of law upon facts that are not genuinely in dispute."  <u>Heyman v. Commerce & Indus. Ins. Co.</u>, 524 F.2d 1317, 1320 (2d Cir. 1975).

II.  <u>Facts</u>[2]

The plaintiff was confined at Cheshire Correctional Institution ("Cheshire") from July 2001 until May 2004.  There are areas at Cheshire where smoking is permitted.  Smoking is not allowed in the inmate housing units or recreation yards.  Correctional officers may smoke in the courtyard adjacent to their dining area.

The plaintiff filed a number of administrative complaints about smoking.  On September 11 and 17, 2001, the plaintiff submitted inmate requests complaining about correctional officers violating prison rules by smoking in the recreation yard.[3]  On September 16, 2001, the plaintiff complained that defendant Handley was smoking in the plaintiff's housing unit, again in violation of prison rules.  About six months later, on April 6, 2002, the plaintiff filed another inmate request stating that defendant Handley had been smoking in the housing unit on a regular basis.  The plaintiff specifically complained about the presence of ETS on April 5 and 6, 2002.

---

[2]The facts are taken from the Local Rule 56(a)1 Statements and the supporting affidavits and exhibits filed by the parties in support of their respective motions for summary judgment, the plaintiff's Local Rule 56(a)2 Statement, the verified complaint and attached exhibits.

[3]The three correctional officers about whom the plaintiff complained on September 11 and 17, 2001 are not named as defendants.

Over a year later, on June 24, 2003, the plaintiff submitted an inmate request to his unit manager complaining that defendant Defrancesco was smoking in the recreation yard on that date. In his request, the plaintiff referred to other incidents of correctional officers smoking in violation of the rules. He has not provided any specific information regarding those incidents and the defendants do not acknowledge that any other incidents occurred. The plaintiff has, however, submitted the affidavit of another inmate who was confined in the same housing unit as the plaintiff. The inmate states that he observed defendants DeFrancesco and Handley smoking in the housing unit in May 2003. Neither party has provided any evidence regarding the level of ETS to which the plaintiff was exposed during the period from September 2001 through June 2003.

Again, on June 30, 2003, the plaintiff complained that defendant Defrancesco was smoking in the recreation yard near the door to the housing unit. The door was open and the smoke entered the housing unit. In response, the unit manager informed the plaintiff that she spoke to defendant Defrancesco and that the matter had been resolved. She told the plaintiff that he should inform the unit manager if the problem persisted. The plaintiff also submitted an institutional grievance regarding the June 24 and June 30 incidents. In view of the unit manager's

6

action, defendant Dzurenda marked the grievance as "compromised" and noted that the issue had been addressed with correctional staff and resolved.  There is no record of further complaints against defendant Defrancesco.

About ten months later, the plaintiff submitted an inmate request stating that during the entire time he was confined in segregation, correctional officers on the second and third shifts smoked in the shower area that was adjacent to his cell.  He complained that smoke entered his cell and asked to be moved to a different cell.  The plaintiff alleges that defendant Wembly intercepted his inmate request and told him that he could not be transferred to another cell.  The defendants do not address the allegations against defendant Wembly or the claim that the plaintiff was exposed to ETS while in segregation.

On April 30, 2004, the plaintiff submitted an inmate request to the medical unit complaining that he had been experiencing a throbbing headache for four days.  In May 2004, the plaintiff was transferred to another correctional facility.

The plaintiff's medical records were submitted with the motions for summary judgment.  There are no notations in the medical records for the period from his arrival at Cheshire in July 2001 through his transfer in May 2004 which show that the plaintiff complained about ETS or that he was treated for

7

symptoms caused by ETS exposure.

III. Discussion

Defendants raise three grounds in support of their motion for summary judgment:  (1) the plaintiff fails to state a viable constitutional claim, (2) the plaintiff has not alleged a physical injury as required to bring a claim in federal court and (3) the plaintiff fails to demonstrate the personal involvement of defendants Dzurenda, Pelkey and Anderson in the incidents giving rise to his claims.  The plaintiff asks the court to deny defendants' motion and enter judgment in his favor.

   A.   Eighth Amendment Claim for Exposure to ETS

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  Helling v. McKinney, 509 U.S. 25, 31 (1993); see also Rhodes v. Chapman, 452 U.S. 337, 351 (1981).  To state an Eighth Amendment claim, an inmate must allege facts demonstrating failure of prison officials to provide for inmates' "basic human needs - e.g., food, clothing, shelter, medical care, and reasonable safety."  DeShaney v. Winnebago County Dept. of Social Servs., 489 U.S. 189, 200 (1989).  A prisoner may assert a cause of action under the Eighth Amendment for deliberate indifference to a serious risk of future harm despite the absence of any symptoms stemming from the subject

8

conditions.  See Helling, 509 U.S. at 32-34 (rejecting argument that exposure to ETS cannot constitute violation of the Eighth Amendment where prisoner did not display medical problems resulting therefrom and discussing cases where plaintiffs successfully asserted Eighth Amendment claims despite absence of current symptoms).

An inmate may prevail on an Eighth Amendment claim "only where he proves both an objective element – that the prison officials' transgression was 'sufficiently serious' – and a subjective element – that the officials acted, or omitted to act, with a 'sufficiently culpable state of mind,' i.e., with 'deliberate indifference to inmate health or safety.'" Phelps v. Kapnolas, 308 F.3d 180, 185 (2d Cir. 2002) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)).  The objective element is satisfied where the inmate shows that the deprivation he alleges is sufficiently serious, i.e., that his confinement under the alleged conditions violates contemporary standards of decency. In the context of an ETS claim, the Supreme Court has held that to satisfy the objective prong, plaintiff must demonstrate exposure to ETS that posed "an unreasonable risk of serious damage to his future health," and that the risk "is not one that today's society chooses to tolerate."  Helling, 509 U.S. at 35-36.  The subjective element requires the inmate to show that

9

correctional officials were aware of and disregarded a substantial risk of serious harm.  <u>See</u> <u>id.</u> at 185-86.  Defendants "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and ... must also draw that inference."  <u>Farmer</u>, 511 U.S. at 837.

Defendants argue that the plaintiff fails to present evidence to satisfy the objective component of the test. Defendants construe the complaint as alleging only six isolated instances of exposure to ETS.  In support of their motion, they have provided interrogatory responses from defendants Defrancesco, Handley and Pelkey.  Defendant Pelkey denies having smoked cigarettes in the housing unit or recreation yard at Cheshire anytime during the past five years.  Defendants Defrancesco and Handley deny smoking in the housing unit but admit smoking in the recreation yard during the past five years.

A careful reading of the verified complaint and attached exhibits reveals more incidents of exposure to ETS that those acknowledged by defendants.  The plaintiff alleges three incidents in September 2001 that are the subject of three of the inmate requests attached to his complaint, two in the recreation yard and one in the housing unit; two specific incidents in April 2002 which are referenced in another inmate request attached to the complaint and an allegation that defendant Handley smoked

regularly in the housing unit since his assignment there; two
specific incidents in June 2003, again documented in inmate
requests attached to the complaint, and a reference to complaints
of other incidents; and allegations from April 2004 that
correctional staff on the second and third shifts smoked in the
shower area adjacent to the plaintiff's cell for the duration of
his confinement in segregation.  The plaintiff provided an
affidavit from an inmate who was confined in the same housing
unit in May 2003.  The inmate states that he observed defendants
Defrancesco and Handley smoking in the housing unit during that
time.

     Although the plaintiff has provided evidence of more
incidents of smoking than are acknowledged by the defendants, he
fails to meet the objective component of the deliberate
indifference standard for the period from September 2001 through
June 2003.  The plaintiff was not assigned to a cell with a
smoker and provides no evidence that he was subjected to ETS
while in his cell.  See Zaire v. Artuz, No. 99 Civ. 9817(LTS),
2003 WL 230868, at *1, *5 (S.D.N.Y. Feb. 3, 2003) (holding that
inmate's exposure to ETS in common areas but not in his cell over
five month period did not constitute unconstitutional exposure to
ETS); Richardson v. Spurlock, 260 F.3d 495, 498 (5th Cir. 2001)
(holding that "sporadic and fleeting exposure to second-hand

11

smoke" caused by sitting near some smokers sometimes "might have been unwelcome and unpleasant" but was not an unreasonable exposure to ETS).  Many of the incidents occurred outdoors in the recreation yard.  The plaintiff also has provided evidence, namely the responses to his inmate request and institutional grievance, that the matter was resolved in late June 2003, when his unit manager spoke to staff.

The plaintiff has provided no evidence of the level of ETS to which he was exposed during the period from September 2001 through June 2003.  Even if true, all of the incidents the plaintiff describes for the period prior to June 2003 involve significantly less exposure to ETS than was present in cases denying summary judgment on ETS claims.  See, e.g., Helling, 509 U.S. at 28 (plaintiff alleged that he was assigned to a cell with an inmate who smoked five packs of cigarettes per day); Davis v. New York, 316 F.3d 93, 100 (2d Cir. 2002) (inmate previously required to share cell with smoker, always housed in unit where majority of inmates smoked and constantly subjected to level of smoke in cell as if he were smoking); McPherson v. Coombe, 29 F. Supp. 2d 141, 145-46 (W.D.N.Y. 1998) (plaintiff was housed with forty-one smokers in a poorly ventilated housing unit); Warren v. Keane, 937 F. Supp. 301, 303 (S.D.N.Y. 1996) (plaintiffs alleged that smoking in unventilated cells and recreation room for five

years created a serious long-term health risk).

The court concludes that the plaintiff fails to satisfy the objective component of the deliberate indifference standard for the period from September 2001 through June 2003. Accordingly, defendants' motion for summary judgment is granted as to this claim and the plaintiff's motion for summary judgment is denied.

The plaintiff also claims that he was subjected to ETS in his segregation cell in April and May 2004.  He states that unidentified correctional officers on the second and third shifts smoked in the shower area adjacent to his cell causing smoke to enter his cell.  He also contends that defendant Wembly intercepted his institutional complaint and told the plaintiff that he could not be transferred to another cell.  Defendants neither acknowledge this exposure nor address this claim in their motion for summary judgment.

Because the plaintiff has provided no specific evidence regarding the level of ETS exposure in his segregation cell, the court cannot determine on the present record whether the exposure violated contemporary standards of decency.  Unless the plaintiff can establish that the levels of ETS violated contemporary standards of decency, he cannot prevail on his claim.  See, e.g., Zaire v. Artuz, No. 99 Civ. 9817(LTS), 2003 WL 230868, at *1, *5

(S.D.N.Y. Feb. 3, 2003) (granting summary judgment where plaintiff was exposed to ETS in common areas but not in his cell over five month period); <u>Lacroix v. Williams</u>, No. 97 Civ. 0790, 2000 WL 1375737, at *3 (holding that ETS exposure not unreasonable where inmate provided no evidence to support statement that he was housed in poorly ventilated 22-man dormitory with 21 inmates who smoked).  Thus, the plaintiff's motion for summary judgment is denied as to this claim.

B.   <u>Personal Involvement</u>

Defendants also argue that the plaintiff fails to establish the personal involvement of defendants Dzurenda, Anderson and Pelkey in any of the incidents giving rise to his claims.  In response, the plaintiff states that all of the defendants who were named in their individual capacities smoked in the housing unit.  Defendants Anderson and Pelkey are named in their individual capacities.

A review of the verified complaint and all exhibits submitted by the plaintiff reveal no factual allegations regarding defendants Anderson or Pelkey.  The plaintiff does not allege that either defendant smoked in the housing unit, recreation yard or shower area.[4]  Because the plaintiff did not

_____

[4]The plaintiff states in his Local Rule 56(a)1 Statement that defendant Pelkey smoked in the shower area.  He does not cite to evidence in the record to support this statement.  More

14

allege, let alone demonstrate, that defendants Anderson or Pelkey smoked in his presence, defendants' motion for summary judgment is granted as to the claims against defendants Anderson and Pelkey on this ground as well.

Defendant Dzurenda was the warden at Cheshire during the relevant time period.  "A supervisor may not be held liable under section 1983 merely because his subordinate committed a constitutional tort."  Leonard v. Poe, 282 F.3d 123, 140 (2d Cir. 2002).  Section 1983 imposes liability only on the official causing the violation.  Thus, the doctrine of respondeat superior is inapplicable in section 1983 cases.  See Blyden v. Mancusi, 186 F.3d 252, 264 (2d Cir. 1999); Prince v. Edwards, No. 99 Civ. 8650(DC), 2000 WL 633382, at *6 (S.D.N.Y. May 17, 2000) ("Liability may not be premised on the respondeat superior or vicarious liability doctrines, ... nor may a defendant be liable merely by his connection to the events through links in the chain of command.")(internal quotations and citation omitted).

_____

fundamentally, a review of the complaint and attached documents reveals no reference to defendant Pelkey.  The plaintiff cannot amend his complaint to include allegations against Pelkey by simply referring to defendant Pelkey in his Local Rule 56(a)1 Statement.  See, e.g., Natale v. Town of Darien, No. CIV. 3:97CV583 (AHN), 1998 WL 91073, at *4 n.2 (D. Conn. Feb. 26, 1998) (plaintiff may not amend complaint in memorandum of law) (citing Daury v. Smith, 842 F.2d 9, 15-16 (1st Cir. 1988)); Hartford Fire Ins. Co. v. Federated Dep't Stores, Inc., 723 F. Supp. 976, 987 (S.D.N.Y. 1989) (same).

> [A] supervisor may be found liable for his
> deliberate indifference to the rights of
> others by his failure to act on information
> indicating unconstitutional acts were
> occurring or for his gross negligence in
> failing to supervise his subordinates who
> commit such wrongful acts, provided that the
> plaintiff can show an affirmative causal link
> between the supervisor's inaction and [his]
> injury.

Leonard, 282 F.3d at 140.

The only reference to defendant Dzurenda is in a grievance
dated July 1, 2003.  The grievance concerned the two incidents of
defendant Defrancesco smoking in the recreation yard on June 24
and 30, 2003.  Defendant Dzurenda determined that the grievance
was compromised because the unit manager had already spoken to
defendant Defrancesco regarding the incident.  Because the
plaintiff's exhibits demonstrate that defendant Dzurenda
responded to the plaintiff's complaints and ensured that action
was taken, this incident does not give rise to a claim of
supervisory liability.

The plaintiff does not allege that he ever informed
defendant Dzurenda that any correctional officers smoked in the
shower area of the segregation unit.  Thus, the plaintiff fails
to present any evidence suggesting that defendant Dzurenda was
made aware of and failed to take action in response to
allegations of smoking in the shower area.  Defendants' motion
for summary judgment is granted as to any claims against

16

defendant Dzurenda.

      C.    <u>State Law Claim</u>

      The plaintiff also alleges that all defendants failed to comply with state law regarding smoking on state property.  The court lacks supplemental jurisdiction over this claim.  In cases where a plaintiff alleges that state actors failed to comply with state law, but does not challenge the law itself, the district court lacks authority to order state actors to comply with state law.  <u>See</u> <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 106 (1984) ("it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law"); <u>Cappello v. New York</u>, 125 F. Supp. 2d 75, 80 (S.D.N.Y. 2000) (holding that the Eleventh Amendment prohibits federal courts from interpreting state law regarding the conduct of state officials).  Accordingly, any claim that defendants failed to comply with state law is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

IV.  <u>Conclusion</u>

      Defendants' Motion for Summary Judgment [**doc. #19**] is **GRANTED** as to all claims against defendants Dzurenda, Anderson, Pelkey, Handley and Defrancesco regarding the incidents occurring between September 2001 and June 2003.  The motion is **DENIED** to

the extent that it may be construed to encompass the claim against defendant Wembly regarding the incidents in April and May 2004.  Plaintiff's Motion for Summary Judgment [**doc. #24**] is **DENIED**.  This case will proceed to trial on the claim against defendant Wembly.

This is **not** a recommended ruling.  The parties have consented to the exercise of jurisdiction by a magistrate judge and the case was transferred to the undersigned for all purposes on May 18, 2005.  (See Doc. #17.)

**SO ORDERED** this 17th day of March 2006, at Hartford, Connecticut.

                                   /s/ Donna F. Martinez
                                   DONNA F. MARTINEZ
                                   UNITED STATES MAGISTRATE JUDGE